Good morning, Your Honor. This is John Lemon, Federal Defender of San Diego, for Mr. Alonzo-Mendoza. Your Honor, there was a significant issue with respect to Morales-Izquierdo that was briefed, but since that case has gone on bonk, I was not going to address it in my oral argument. Instead, I'd ask that Mr. Alonzo-Mendoza's conviction be reversed, principally for two separate reasons. First of all, the deport hearing that was conducted back in 1997 violated due process, and the government cannot possibly establish that Mr. Alonzo-Mendoza did not have a plausible claim that he would have received relief. The other issue is a pretty straightforward Apprendi issue, because the head of jury in this case actually received evidence as to two removals, one from 1997 and one from 2003. It was not in the indictment. It was not submitted to the jury for proof beyond a reasonable doubt. So it does not fall within the Almendarez-Torres exception to Apprendi. I don't understand that. First of all, I don't understand why, after Booker, Apprendi even comes up. Now that the guidelines are not mandatory, none of the enhancements have to be submitted to the jury for proof beyond a reasonable doubt. And second, I don't understand why it doesn't fall into Almendarez-Torres. Okay. If this is actually just a good old-fashioned Apprendi issue, we can forget about Booker and Blakely. The statutory maximum for 1326 is two years. Wait. I don't understand how anything can be. In this context, it is. The stat max under 1326 is two years, unless there is a conviction for an aggravated felony or a felony. Now I understand. Okay. Thank you. So the stat max that Mr. Alonzo-Mendoza should have been subjected to going to the second issue here on the Apprendi violation is two years. Now, the timeline here is critical because what happened is Mr. Alonzo-Mendoza only went before an immigration judge one time in 1997. That was before he sustained his only aggravated felony conviction. Then he was removed subsequent to the expedited removal provision that's at issue in Morales-Escuerdo. He was removed without going before an immigration judge in 2003. The government introduced at trial both removals. They introduced four or five exhibits from the 1997 deport that actually preceded the aggravated felony, and they produced another couple of exhibits with respect, including the warrant of removal from 2003. And they even argued in closing, this guy's been deported twice. That was the government's position at trial. So instead of a very typical 1326 case where the government proves up one deport and then the date of the conviction of the aggravated felony, because 1326B requires that the aggravated felony come before the deport. And so in a typical 1326 case, the government introduces one deport, and then the under the jury had both of them before it. In this case.  So why doesn't that constitute a jury finding that at least one of them was, and they can assume that one of them was 1997? Well, because what's happened? Excuse me. It was the May of 2003. Well, what happened here is, again, I'd like to compare this to the typical case. Because in a typical case, the jury gets one. I understand. Now there are two. Right. And under Almendar's torus, then the court can make a fact-finding as to the prior conviction. So therefore, it necessarily follows that, say, someone was deported in 1996 after having, for example, an aggravated felony in 1995. That satisfies the requirement of 1326B that the deport come after the aggravated felony. I understand that. Okay. Now there's one before, there's one after. Exactly. Okay. Now the jury. Excuse me. Let me ask my question. The jury, therefore, got two predicate acts that it could have found constituted a prior deportation. Okay. One of them was post the conviction. Right? Okay. So the jury has had it submitted to it. Are you arguing there's no finding of unanimity on that? There is certainly a significant unanimity question. But before we even get there, the first issue is that the deport was not, neither the date, neither the deport nor the dates of those deports was in the indictment, which is required by Apprendi. And neither were submitted to the jury for proof beyond a reasonable doubt. The jury was merely instructed that it had to find that Mr. Alonzo Mendoza was not a citizen, that he was deported, and that he was found back here without permission. That's it. So they could have found either or one of the other. I'm sorry. They could have found one or the other of the deports, or conceivably both, but we don't know. So that necessarily follows. So that's a unanimity issue, isn't it? Right. Exactly. But it's even more than unanimity because it's not in the indictment. In the Apprendi, the Almendares-Torres exception to Apprendi, and I know that typically Almendares-Torres is not very exciting stuff, but here it's different. The Almendares-Torres exception to Apprendi is very narrow. It requires that anything other than the fact of a prior conviction be in the indictment and proved beyond a reasonable doubt. And in this case, because the government introduced two removals, the district court necessarily had to find that one of those removals came after the aggravated felony. Are you saying that the jury could have found that the earlier removal took place, but that wouldn't do the job? Exactly. Precisely what I'm saying. Because that was before the conviction for the aggravated felony. Precisely. The 1997 conviction, 1997 removal doesn't get the enhancement under 137. Now, if we find failure due process on the 97 deportation, we don't reach the sentencing issues, right? That's absolutely right. That's why I was going to actually address it first. With respect to the due process issue, what happened here is also pretty straightforward. Because Mr. Alonzo Mendoza at that time had no adult record and not been convicted of an aggravated felony, he was eligible for a voluntary return. He was not advised of that. The district court found that to be a defect in the proceeding. However, the district court held that Mr. Alonzo Mendoza wasn't prejudiced because he didn't have a plausible claim that he would have received relief, essentially because of the significant or the serious nature of the prior. I think it's impossible for the government to speculate that he would not have received a voluntary departure had he asked for it. Wait a minute. This guy's a murderer. Yes, but it was actually – To give breaks to murderers? Well, I mean, that's essentially what the government and to a certain extent the district court said that Mr. Alonzo Mendoza's a bad guy. We know the AG wouldn't have helped him out. But that's not good enough in this context because when Congress wants a single factor to determine whether or not someone is eligible for relief, they say so. And in other parts of the immigration – So being a murderer could be outweighed by being an illegal immigrant for a long time? I'm not saying that. But what I'm saying is that compared to the section of the immigration code that allows for a certain special adjustment status for agricultural workers, Congress specifically said we don't want anyone who has sustained a juvenile adjudication that otherwise would be an aggravated felony. We don't want them eligible for that, so they're not going to get it. So here had they wanted someone with a serious juvenile record not to be eligible for relief, they would have said so, and they didn't. So I think it's – by negative implication, he certainly was eligible for it. The government in their brief says that the – But eligibility is not the same as a plausible claim, is it? I'm sorry? Eligibility is not the same as having a plausible claim. Well, I think it certainly has a plausible claim when, as the Supreme Court has observed, 98 percent of people who are eligible for removal get it. We're not talking about relief from deportation in the context of staying in the country. I mean, that's a much thornier question. We're talking about being asked to leave on his own, so maybe he can come back later. And almost everyone who is eligible for voluntary departure gets it. I mean, this Court has referred to the voluntary – the fast-track voluntary departure provision as a guarantee, as a certainty, as the rough immigration equivalent of a guilty plea. And I see I'm running out of time. I'd like to save a little bit of time. What about his right to appeal? Was he advised of his right to appeal in the 1997 proceeding? It was a mass waiver, Your Honor, and because it was a mass waiver, it was also a due process violation. But I think the prejudice flows from the fact that he wasn't advised of his right to voluntarily depart. I don't – I mean, he's excused of the exhaustion requirement of 1326E, but I'm not alleging that there's any prejudice from that. Okay. Thank you. Okay. Thank you. Thank you. May it please the Court, my name is Larry Spong. I represent the United States. Let me just begin by saying should the defendant request an on-the-line remand, we do believe a limited remand would be appropriate in this case. It should be clear that the person we're dealing with here is a person who entered the country in 1988, within a year began a series of contacts with the police, including weapons, attempted theft, grand theft, and assaults. Included in those was also a murder in which the defendant admitted that he went out with his homeboys to look for this particular defendant. He then was adjudicated as a juvenile, found guilty of the murder, was removed from the country, and has continued to come back and continue his criminal endeavors. But in 1997, the issue was whether or not he would have been plausibly, plausibly eligible for fast-track voluntary removal, right? That's correct. And you're saying you can conclusively establish that as of 1997, based on the juvenile crime, without any consideration on the record of the mitigation arguments about how he performed while in custody and so on, that it's not plausible that he could have been considered? I would argue that it is not plausible. Okay. Let's be clear. How many, in 97, not what he did after that, but in 97, what was his record at that point beyond the juvenile drive-by shooting? Beyond the juvenile drive-by shooting were the other four contacts, the other four arrests with the court. But it is not the government's burden. It is always the defendant's burden to show prejudice. And I believe it's interesting to note that counsel continues to say, well, the government needs to establish the government. The reason he says that is because when you look at the facts, there aren't any facts upon which he can argue. The court, at the time it did this, looked back at 97 and said, this is a person who has been in this country seven of nine years in incarceration, was convicted of murder, and it should be noted that the cases that talk about discretionary relief, and that's what we're talking about. Wait. The nine years he was in the U.S., seven of them he was in jail? He was in custody. He was in custody for the murder conviction. Well, just so I can understand who's got the burden here, under Gonzales-Valerio, I understood that if there's a plot, if they can demonstrate a plausible ground for relief, doesn't the burden shift to the government to demonstrate that the procedural violation could not have changed the proceeding's outcome? There is that case that says that. Yes, Your Honor, it's the one. But it does require first that the defendant show a prima facie case, at least, of plausibility. Well, but doesn't he have a prima facie case? Absolutely not. If you look on in Gonzales-Valerio, it continues to show what does not establish a plausible case. And in case after case there that is quoted, page 1057 of Gonzales-Valerio, shows people who have much more outstanding equities. And it should be noted that in this case, it's not just plausibility. When there is a grave criminal procedure, the defendant has a heightened burden. He has to show outstanding or unusual equities. And so not only is the burden on him, it's a heightened burden. So for him to make a plausibility claim on that, it takes many more facts. The district court here considered all the facts going for him. His family was here. His family brought him here. The father did say they relied on him for support. But, of course, the judge was clear enough to say that had to be after the removal because he was in custody. So he did have some family ties. But other than that, what we have is a person who has constant criminal contacts from within a year when he entered. What do you do about this word subsequent in this statute at 1326b-1? Your Honor, first of all, I think this Court has already addressed that in Castillo-Rivera, where this Court said that the recidivism exception is not inapplicable merely because the removal must have been subsequent to conviction. This Court wrote that in the context of an almondares torres charge. So in other words, it's just this kind of thing that the judge can look to under almondares torres. I'm confused about something. Okay. If I have this right, and I may not, the jury was given two removals. One was before his felony conviction, and one was after his felony conviction. There was nothing in the instructions to stop them from using the one before his felony conviction. So for all we know, that's the one that they used. But it looks like that's not sufficient under 1326b-1. That's what I'm confused about. Well, under 1326b-1, it's a judge-found factor. It's a sentencing enhancement. And so we don't have to submit it to the jury, and that's what Castillo-Rivera tells us. But even to step back a minute, where there's two deportations, and the reason there's two deportations here is obvious. It's because defendant was arguing about the fact that the second one was done by reinstatement. So that's why we have two here. And the fact is, there's just no contrary evidence. Nothing was ever put into evidence. Nothing was ever argued by defendant that there wasn't that second deportation. So there's nothing to suggest that there was any question in the jurors' minds whatsoever. So even if it is required, then clearly the jury must have found that. But I would argue that it's not required, that this Court has already decided that. And what was the case where we've decided that? Castillo-Rivera. 244, Fed Third, 1020 at 1025. And so I would argue that this does fall within Almendar's Torres, and it is that. And even if let's assume ---- Let me see if I've got this right. He was deported twice, and there really is no factual question about that. The only issue is that there's a Federal practice of relying on the first deportation proceeding so that when they come back in and get thrown out again, it's based on the first one. Right. We have a case, Morales-Izquierdo, I think. Correct. It says that's no good, but that case is not effective because it's being reheard en banc. That's correct. So that's where we come out now. We've got two deportations without question. I believe so. Yes. Yes. And I would say Morales-Izquierdo didn't say it wasn't good under this context. It just said that the way the INS did it was contrary to its own regulations. It didn't make it violative of due process. It made it otherwise illegal. And so even if Morales-Izquierdo was valid, we would still be able to say this was okay. Is it your understanding that Castillo-Rivera specifically addressed this language in 1326 about the subsequent requirement? Yes, Your Honor. On page 1025, this Court stated, talking about a sentencing enhancement, says, Moreover, Pacheco-Cepeda leaves no doubt that the recidivism exception to Apprendi's holding is not, contrary to Castillo's suggestion, somehow inapplicable to an aggravated felony enhancement under 8 U.S.C. 1326 because the removal must have been subsequent to an aggravated felony conviction. Right. Now, all that sentence says is that Apprendi doesn't affect it. It doesn't say that the conviction doesn't have to be subsequent. Is that right? Oh. Well, that's not my reading, Your Honor, because the argument that's being addressed here at the end is that this very argument, that somehow because the removal must be subsequent to an aggravated felony, that requires a judge to make some finding. And this Court said, despite the fact that the removal must be subsequent to an aggravated felony, that's not an application of Apprendi. Right? Well, but this Court said that Apprendi, the next sentence, unmistakably carved out an exception for prior convictions that specifically preserved the holding of Almodarra's part. I know that, but we're not concerned here with Apprendi. We're just trying to construe the statute, right? Your argument, I take it, is that if it can be a judge-made finding, he can find that the May 23rd deportation counts or removal counts, and therefore it's subsequent. Absolutely. Even if it's a judge-made finding, he has the ability to make that, yes. And he has the ability to make that based on the same things we – the same judicially noticeable documents that are relied on every day. And if it – for argument purposes, if it weren't, then what happens with the fact that two went before the jury and they weren't asked specifically what's the response to the unanimity issue? Where here there simply is no contrary evidence, there's no dispute, there's simply nothing to suggest that there could have been any even plausibly possible – even a possible finding otherwise, then clearly here the jury must have found that. Unless there are no questions. Thank you, counsel. Your Honor, I don't have a whole lot of time, so just briefly, with respect to my client being a bad guy, I just want to say real quickly, he was not the shooter, he was not the driver, he was along for the ride, and he did try to rehabilitate himself while in prison. That's all in the PSR. With respect to the burden of proof on the deport issue, a prima facie showing is that necessarily – we made the prima facie showing by being eligible for the relief, then the burden shifts to the government. That's what Gonzales Valerio says. With respect to what counsel cited at page 1057, that had to do with 212C relief and why that individual wasn't eligible for 212C relief, which again involves staying in the country, not leaving. Most importantly, with respect to the Apprendi issue, we have here – it really is a straightforward Apprendi issue. We have two deports before the jury. But what about Castillo-Rivera? Your Honor, I think that that was – I believe that that case was actually referring to the idea that the court would find under Almendar's TOR as the date of the conviction, and then necessarily when there's one deport introduced to the jury, we know that the conviction preceded the deport. But that's not what happened here. The facts of that case, I don't believe there were two deports presented to the jury. So what necessarily has to happen here is the district court necessarily has to make findings of fact that relate to the deport. And that is impermissible. A recent case of United States v. Courtyard, I can only cite to Star 5 because it doesn't even have a – We have the case. I'm sorry? We have the case. Okay. This Court says that such judicial fact-finding, quote, may be accurate, reliable, or based on objective information simply does not change the nature of the inquiry. It's beyond the scope of the Almendar's TOR as exception. And also, as I believe one of your honors actually wrote, the Tigge or Tigge opinion. Right. Tigge, where this Court said that the juvenile conviction doesn't qualify under the Almendar's TOR as exception. And that's because the guarantees of fairness and the right to a jury trial is not present when someone is – when the Court's taking notice of something other than a prior adult conviction. And that's what the Court had to do here. The Court had to take notice of which deport occurred when. Thank you. Thank you, counsel. Thank you. United States v. Alonzo Mendoza is submitted.
judges: Kleinfeld, Tashima, Fisher